ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **EDWIN OLIVENCIA ORTIZ**<br><br>Recurrente<br><br>v.<br><br>**JUNTA DE LIBERTAD BAJO PALABRA**<br><br>Recurrida | TA2025RA00311 | **REVISIÓN** procedente de la **Junta de Libertad Bajo Palabra**<br><br>Caso Núm.: **005017**<br><br>Confinado Núm.: **2-11574** |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Comparece ante nos el señor Edwin Olivencia Ortiz (Sr. Olivencia Ortiz o recurrente), por derecho propio e *in forma pauperis*,[1] mediante el presente recurso de *Revisión Judicial*, y nos solicita que revoquemos la *Resolución* emitida el 20 de agosto de 2025 por la Junta de Libertad Bajo Palabra (Junta o recurrida).[2] A través del referido dictamen, la Junta determinó no concederle el privilegio de libertad bajo palabra.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

**I.**

Según surge del expediente ante nos, el Sr. Olivencia Ortiz se encuentra cumpliendo una pena de prisión de ciento veinticuatro (124) años por los delitos de asesinato en primer grado, tentativa de asesinato, robo, tentativa de robo, delitos relacionados con armas,

---

[1] Por medio de la *Resolución* emitida el 29 de octubre de 2025, autorizamos la comparecencia del Sr. Olivencia Ortiz *in forma pauperis*.
[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, Entrada Núm. 1, Anejo 2. Notificada y archivada en autos el 22 de agosto de 2025.

fuga y daños.[3] Asimismo, se estima que dicha pena se extinguirá el 23 de abril de 2043.

El 27 de abril de 2012, la Junta adquirió jurisdicción para evaluar la concesión del privilegio de libertad bajo palabra al Sr. Olivencia Ortiz.

Pertinente al asunto ante nos, el Departamento de Corrección y Rehabilitación (DCR) denegó tratamiento interno para el Sr. Olivencia Ortiz el 11 de abril de 2025.[4] A esos efectos, el DCR dictó una carta el 10 de abril de 2025 donde resolvió no autorizar a favor de este la coordinación de una entrevista con relación a los programas de tratamientos internos, pues sostuvo que ese tipo de programa no se consideraba un plan de salida y ya el Sr. Olivencia Ortiz se había beneficiado de terapias de trastorno adictivo en la institución.[5] Además, no surgía que el Sr. Olivencia Ortiz ameritara tratamiento. En su consecuencia, determinó no asumir el pago del tratamiento.

De igual modo, el DCR emitió un *Informe de ajuste y progreso a la Junta de Libertad Bajo Palabra* recibido por la Junta el 16 de abril de 2025.[6] A tenor con este, el Sr. Olivencia Ortiz completó unos tratamientos contra la adicción de los programas de Trastornos Adictivos y Aprendiendo a Vivir sin Violencia del Negociado de Rehabilitación y Tratamiento el 23 de enero de 2007 y el 20 de julio de 2004, respectivamente. Además, como parte del plan de salida y para posibles pases del programa de tratamiento interno, el Sr. Olivencia Ortiz propuso la residencia de su primo.

Posteriormente, la Junta emitió la *Resolución* recurrida el 20 de agosto de 2025 en la que determinó no conceder el privilegio de libertad bajo palabra al Sr. Olivencia Ortiz y reevaluar su caso en

---

[3] *Íd.*
[4] *Íd.*, Entrada Núm. 5, Anejo III.
[5] *Íd.*, Anejo II.
[6] *Íd.*, Anejo I.

agosto de 2026.[7] Para sustentar su determinación, la Junta precisó los factores que favorecieron y desfavorecieron dicha decisión, los que citamos a continuación:

> Factores <u>a favor</u> del peticionario:
>
> El peticionario se encuentra clasificado en custodia mínima, según consta en su expediente. Además, le fue realizada la Toma de Muestra de ADN el 6 de marzo de 2013, según lo dispuesto en la Ley 175-1998, según enmendada.
>
> El peticionario no ha sido objeto de querellas por problemas disciplinarios ni casos pendientes en los tribunales. Del expediente surge que el peticionario completó las terapias de Trastornos Adictivos el 9 de agosto de 2005 y 23 de enero de 2007.
>
> El peticionario culminó las terapias de Aprendiendo a Vivir sin Violencia el 9 de agosto de 2005 y 23 de enero de 2007. El peticionario fue evaluado por la psicóloga Jennifer M. Crespo Rodríguez del SPEA el 17 de enero de 2024.
>
> Factores <u>en contra</u> del peticionario:
>
> El peticionario propuso su plan de salida en libertad bajo palabra para tratamiento interno en Teen Challenge. Fue referido para ser evaluado por el DCR. Del DCR determinaron el 10 de abril de 2025 por escrito lo siguiente, no se autoriza la entrevista del peticionario para ingresar a tratamiento interno debido a que este se benefició de terapias de Trastornos Adictivos a nivel institucional. Además de que se consignó que al presente no se desprende que el peticionario amerite tratamiento interno y que los programas internos no son plan de salida, por lo que el DCR determinó no asumir el pago del tratamiento.
>
> El peticionario desea tomar pases en el hogar de su primo Jayson Rodríguez Vélez en Mayagüez. Este hogar no ha sido corroborado por el DCR para determinar su disponibilidad o viabilidad.
>
> Tomando en consideración todos los factores del presente caso, consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra.
>
> . . . .[8]

(Énfasis suplido).

---

[7] *Íd.*, Entrada Núm. 1, Anejo 2.
[8] *Íd.*, pág. 3.

Inconforme, el Sr. Olivencia Ortiz presentó una *Reconsideración* el 11 de septiembre de 2025.[9] En esencia, esgrimió que la denegatoria de concederle una entrevista con el personal de *Teen Challenge* contradecía el espíritu de la política pública de rehabilitación en Puerto Rico y que la determinación del DCR de no asumir el costo del tratamiento era arbitraria, caprichosa e irrazonable, toda vez que el costo de mantenerlo en prisión era mayor. Añadió que no se le podía perjudicar por la negligencia e inacción del DCR, y reiteró que había alcanzado un nivel de rehabilitación adecuado para reintegrarse a la sociedad.

Además, que estaba dispuesto a presentar opciones alternas sobre un hogar viable de modo que la falta de uno no era un factor decisivo. Igualmente, planteó que la denegatoria de la Junta sin concederle alternativas constituía una aplicación retroactiva de normas posteriores cuando, al momento de su sentencia, la Junta no contaba con un reglamento vigente y ello constituía una aplicación retroactiva improcedente en contravención con el principio en contra de la aplicación de leyes *ex post facto*.

Expirado el término dispuesto sin que la recurrida acogiera el petitorio de reconsideración, el Sr. Olivencia Ortiz compareció ante nos el 23 de octubre de 2025, mediante un *Recurso Judicial*, y señaló a la Junta por la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., ACTUANDO DE MANERA ARBITRARIA Y CAPRICHOSA, EN VIOLACIÓN AL DERECHO DE REHABILITACIÓN DEL CONFINADO Y DEL DEBIDO PROCESO DE LEY.
>
> SEGUNDO ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., AL NO BASAR SU DETERMINACIÓN EN EVIDENCIA SUSTANCIAL QUE OBRA EN EL EXPEDIENTE, ERRÓ EN LA APLICACIÓN E INTERPRETACIÓN DE LAS LEYES Y LOS REGLAMENTOS QUE SE LES HA ENCOMENDADO ADMINISTRAR, LESIONANDO ASÍ LOS DERECHOS

---

[9] *Íd.*, Anejo 3, págs. 9-18.

FUNDAMENTALES DEL PETICIONARIO AL ACTUAR ASÍ ARBITRARIA, CAPRICHOSA E ILEGALMENTE, HABIENDO EMITIDO UNA RESOLUCIÓN FINAL CARENTE DE BASE RACIONAL Y CONTRARIA A DERECHO.

TERCER ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., AL ACTUAR IRRAZONABLE E ILEGALMENTE, YA QUE SU DETERMINACIÓN FINAL CONDUCE A LA COMISIÓN DE UNA INJUSTICIA, YA QUE SU INTERPRETACIÓN PRODUCE RESULTADOS INCOMPATIBLES O CONTRARIOS AL PROPÓSITO DEL ESTATUTO INTERPRETADO Y A SU POLÍTICA PÚBLICA.

CUARTO ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., AL ABUSAR DE SU DISCRE[C]IÓN AL ABSTENERSE DE REALIZAR EL CORRESPONDIENTE AN[Á]LISIS HERMEN[É]UTICO DE FORMAR [SIC] CONCLUSIVA PARA DETERMINAR SI EL PETICIONARIO CUALIFICA CONFORME A LOS CRITERIOS DE ELEGIBILIDAD CONTENIDOS EN LA LEY NÚM. 118 DEL 22 DE JULIO DE 1974, SEGÚN ENMENDADA.

QUINTO ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., AL NO CUMPLIR CON LAS GARANTÍAS MÍNIMAS DEL DEBIDO PROCESO DE LEY EN SU VERTIENTE PROCESAL; QUE LA DECISIÓN SE BASE EN EL R[É]CORD, Y LAS DISPOSICIONES SOBRE EL PROCESO DE ADJUDICACIÓN ESTABLECIDOS EN LA L.P.A.U.G., LEY NÚM. 38 DE 30 DE JUNIO DE 2017, SEGÚN ENMENDADA.

SEXTO ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., AL EMITIR DETERMINACIÓN COARTANDO EL DERECHO LIBERTARIO DEL SR. OLIVENCIA ORTIZ, YA QUE DICHA DECISIÓN AFECTA SU INTERÉS LIBERTARIO GARANTIZADO POR LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, ART. II[,] SEC. 7 Y LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS, ENMIENDA QUINTA[,] USCA ENMD. V.

SÉPTIMO ERROR: ERRÓ LA J.L.B.P. AL DENEGAR LA SOLICITUD DEL PETICIONARIO – DE CONCEDER LA L.B.P., AL EMITIR RESOLUCIÓN DE NO CONCEDER AL [S]R. OLIVENCIA ORTIZ DICHO PRIVILEGIO, DESCANSANDO EN EL INCUMPLIMIENTO DE LEY COMETIDO POR EL D.C.R. Y SUS DEPENDENCIAS Y NO EN SU PROPIO CRITERIO DE RAZONABILIDAD OTORGADO A LA JUNTA MEDIANTE EL ORDENAMIENTO JURÍDICO VIGENTE.

Por su parte, la Junta presentó un *Escrito en cumplimiento de resolución* el 1 de diciembre de 2025 donde suplicó la confirmación del dictamen recurrido.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso ante nuestra consideración, no sin antes delimitar el marco jurídico aplicable.

## II.

### A.

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, Ley Núm. 201 del 22 de agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Véase además, *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq*. A esos efectos, en el foro apelativo tiene la obligación de brindarle deferencia a las determinaciones de los organismos administrativos en consideración a la experiencia y el conocimiento especializado de las agencias respecto a los asuntos que le fueron delegados. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33. De igual modo, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarlas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, *supra*.

Nuestra facultad revisora tiene como fin asegurar que las agencias administrativas actúen a tenor con las facultades otorgadas por ley y en cumplimiento con los mandatos constitucionales, en especial, el de debido proceso de ley. *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 88 (2022); *Capote Rivera v. Voilí Voilá*, 213 DPR 743, 753 (2024). Para ello, al

momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad en cuanto a la actuación de la agencia. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 743 (2012). Al aplicar este criterio, los foros revisores deben determinar si el dictamen del ente administrativo en la interpretación de los reglamentos y los estatutos que le incumbe implementar es razonable y no si dicha determinación es la más razonable o la mejor. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra.* En otras palabras, la revisión judicial procede si la agencia actuó arbitraria o ilegalmente, o tan irrazonable que su actuación constituye un abuso de discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018). De igual modo, la deferencia a las agencias administrativas cede cuando la interpretación de estas produce resultados incompatibles o contrarios a la política pública o al propósito del estatuto interpretado. *Buxó Santiago v. Estado Libre Asociado de Puerto Rico*, 2024 TSPR 130. A tenor con lo anterior, la Sección 4.5 de la LPAU, *supra*, sec. 9675, y la jurisprudencia aplicable, limitan la revisión judicial a tres aspectos; estos son que (1) el remedio concedido por la agencia sea apropiado; (2) las determinaciones de hechos estén basadas en evidencia sustancial que obra en el expediente administrativo; y (3) las conclusiones de derecho sean correctas en todos sus aspectos mediante la revisión del tribunal. De igual modo, la determinación final de la agencia sujeto a revisión judicial debe contener la advertencia sobre el derecho a solicitar reconsideración o revisión judicial, al igual que las determinaciones de hechos como las conclusiones de derecho. Sección 3.14 de la LPAU, *supra*, sec. 9654.

Por otro lado, "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Sección 4.5 de la LPAU,

*supra*, sec. 9675; véase además, *Otero Rivera v. Bella Retail Group, Inc.*, 214 DPR 473, 485 (2024). Si bien señalamos que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto, y la revisión judicial se limita a resolver si estas actuaron arbitraria o ilegalmente, esta consideración por parte de los tribunales no equivale a una renuncia de su función revisora. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56. Lo anterior, pues la tarea de interpretar la ley corresponde inherentemente a los tribunales. *Vázquez v. Consejo de Titulares, supra.* Es decir, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos, mas no guiados por la deferencia automática, sino por los mecanismos interpretativos propios del foro judicial. *Vázquez v. Consejo de Titulares, supra.*

En cuanto a las determinaciones de hechos, estas " 'poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas' ". *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 114 (*citando a Rolón Martínez v. Caldero López, supra*, pág. 35); *Otero v. Toyota*, 163 DPR 716, 728 (2005). A tales efectos, la "[e]videncia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión' ". *Empresas Ferrer v. ARPe*, 172 DPR 254, 266 (2007) (*citando a Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)).

**B.**

Por otro lado, la Ley Núm. 118 de 22 de julio de 1974, según enmendada, mejor conocida como la *Ley de la Junta de Libertad Bajo Palabra*, 4 LPRA sec. 1501 *et seq.* (Ley 118-1974), creó la Junta de Libertad Bajo Palabra, adscrita al DCR. Dicho organismo cuenta con la autoridad para decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de

Puerto Rico. Artículo 3 de la Ley 118-1974, *supra,* sec. 1503. El privilegio de libertad bajo palabra "será decretad[o] para el mejor interés de la sociedad y cuando las circunstancias personales permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". Artículo 3 de la Ley 118-1974, *supra,* sec. 1503. De esa manera, se permite que una persona convicta y sentenciada a extinguir una pena de prisión, cumpla la última parte de ésta fuera de la institución penal y "sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad." *Maldonado Elías v. González Rivera,* 118 DPR 260, 275 (1987).

Ciertamente, "el beneficio de la libertad bajo palabra *no* es un derecho reclamable, *sino un* privilegio cuya concesión y administración recae en el tribunal o en la Junta." *Quiles v. Del Valle,* 167 DPR 458, 475 (2006). (Énfasis suplido en el original). De manera que la Junta puede imponer las condiciones que estime necesarias. De esta forma, la libertad es una cualificada toda vez que dichas condiciones restringen las actividades del liberado más allá de las restricciones comunes que se imponen por ley a cada ciudadano. *Benítez Nieves v. ELA,* 202 DPR 818, 825 (2019). En ese sentido, la Junta tendrá la facultad de conceder la libertad bajo palabra a una persona recluida en una institución carcelaria sujeta a los siguientes criterios:

> **(1)** La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> **(2)** Las veces que el confinado haya sido convicto y sentenciado.
>
> **(3)** Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
>
> **(4)** La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
>
> **(5)** El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de

Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

**(6)** La edad del confinado.

**(7)** El o los tratamientos para condiciones de salud que reciba el confinado.

**(8)** La opinión de la víctima.

**(9)** Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

**(10)** Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

**(11)** Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

Artículo 3-D de la Ley 118-1974, *supra*, sec. 1503d.

Cabe resaltar que no puede privarse a una persona de su libertad absoluta o limitada sin garantizarle el debido proceso de ley. *Martínez Torres v. Amaro Pérez,* 116 DPR 717, 725 (1985); *Vázquez v. Caraballo,* 114 DPR 272, 279 (1983).

### C.

Mediante la adopción del Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9603, Junta de Libertad Bajo Palabra, 25 de septiembre de 2024 (Reglamento 9603), pág. 4, se establecieron las normas procesales que rigen en el descargo de la función adjudicativa de la Junta. En lo pertinente, establece en su Artículo X, Sección 10.1, lo siguiente:

A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.

B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:

1. Historial delictivo.

a. La totalidad del expediente penal.

     b. Los antecedentes penales. Se entenderá por antecedentes penales las veces que un peticionario haya sido convicto y sentenciado.

     c. Naturaleza y circunstancias del delito, por el cual cumple la sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.

     d. Si cumplió con el pago de la pena especial para el Fondo de Compensación y Servicios a las Víctimas y Testigos de Delito, del Departamento de Corrección y Rehabilitación, dispuesta en el Artículo 48 (i) del Código Penal de 2012, en los casos que aplique.

     e. Si existe una orden de detención ("detainer") emitida por cualquier estado de los Estados Unidos, el tribunal federal, el gobierno federal y/o del Servicio de Inmigración y Naturalización.

. . . .

7. El historial social.

     a. Se tomará en consideración la totalidad del expediente social.

     b. Si anteriormente ha estado en libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

        i. Cumplimiento y ajustes institucionales.

        ii. Si se le revocó la libertad bajo palabra, libertad a prueba o cualquier otro programa de desvío.

     c. El historial de ajuste institucional y el historial social preparado por el Departamento de Corrección y Rehabilitación.

     d. Si se le han impuesto medidas disciplinarias, disponiéndose que no se tomarán en consideración para efectos de estos criterios aquellas medidas disciplinarias en las cuales han transcurrido un (1) año desde la fecha en que se impuso dicha medida disciplinaria. Esto no impedirá que la Junta pueda evaluar el caso cuando el peticionario cuente con alguna medida disciplinaria o se encuentre pendiente de una, incluyendo positivos o positivos administrativos a sustancias controladas.

     e. El historial de trabajo y/o estudio realizado en la institución.

8. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

   a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.

   . . . .

   e. Residencia

      i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o en un programa interno.

      ii. De proponer una residencia, el peticionario proveerá a su técnico de servicio sociopenal el nombre completo, número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia para que esta sea corroborada por el Programa de Comunidad correspondiente. En estos casos, se realizará además una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

      iii. De proponer una residencia propia y no contar con un recurso familiar, deberá presentar como recurso y apoyo al amigo consejero o alguna persona que le pueda servir de apoyo, aunque no resida con el peticionario. Deberá presentar el nombre completo de esa persona, número de teléfono y correo electrónico. En estos casos, también se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

      iv. Si el peticionario interesa ingresar a un programa interno, tendrá que presentar la carta de aceptación del programa, así como proponer una residencia alterna en la cual disfrutará de los pases, en los casos que aplique. Dicha residencia alterna será corroborada para determinar su viabilidad. Si la residencia alterna no resulta viable, el peticionario no podrá disfrutar de pases hasta tanto provea una residencia alterna viable, y así lo autorice la Junta. Además de la carta de aceptación, en caso de que el Programa de Tratamiento interno al que desea ingresar el peticionario sea costeado por el Departamento de Corrección y

Rehabilitación, deberá contar con un referido de este último donde se exprese que el mismo es autorizado para ingresar a dicho Programa, siempre y cuando sea requerido por el Departamento de Corrección y Rehabilitación. La determinación será basada en los criterios establecidos por el Departamento de Corrección y Rehabilitación.

v. Para determinar si la vivienda propuesta es viable, la Junta considerará, pero sin limitarse a, lo siguiente:

(a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.

(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y de las personas con las cuales convivirá el peticionario.

(c) Condición de la planta física de la residencia y cantidad de habitantes en esta.

(d) Si la residencia propuesta está a 30 millas de distancia en vehículo de la residencia de la parte perjudicada.

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta.

(f) En los casos que aplique, si el peticionario se encuentra incluido en el contrato de vivienda o haya certificación de la administración correspondiente.

(g) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

. . . .

13.      La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.

Artículo X, Sección 10.1 del Reglamento 9603, *supra,* págs. 36-39, 41-43, 48.

## D.

La Constitución del Estado Libre Asociado, al igual que la

Constitución de los Estados Unidos, prohíbe la aprobación de leyes

*ex post facto.* Const. PR, Art. II, Sec. 12, LPRA, Tomo 1; Const. EE.

UU., Art. I, Sec. 10, LPRA, Tomo 1. Específicamente, se veda a la Asamblea Legislativa de criminalizar una conducta de forma retroactiva. Se requiere, además, que el estatuto sea más perjudicial para el acusado que el vigente al momento de la comisión del acto. *González Fuentes v. E.L.A.*, 167 DPR 400, 408-409 (2006). Asimismo, esta protección constitucional tiene como propósito garantizar que "los estatutos provean al ciudadano una notificación adecuada (*fair warning*) de la conducta prohibida y las consecuencias penales que acarrea realizar dicha conducta". *González Fuentes v. E.L.A., supra*, pág. 408. Además, se pretende evitar que el Estado utilice el poder coercitivo arbitraria o vengativamente. *González Fuentes v. E.L.A., supra*, pág. 408.

Ahora bien, la cláusula contra leyes *ex post facto* se activa cuando una disposición "(i) tiene vigencia posterior a los hechos delictivos imputados o cometidos, y (ii) deja al afectado en una situación desfavorable o perjudicial, en relación con el estado de derecho vigente en el momento de la comisión de los hechos delictivos". L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 549. Asimismo, existen cuatro (4) tipos de leyes que se consideran *ex post facto*; a saber, las leyes que "(1) criminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable". *González Fuentes v. E.L.A., supra*, pág. 408.

Es meritorio mencionar, no obstante, que la cláusula constitucional que prohíbe leyes *ex post facto* <u>no se extiende</u> a actos

judiciales, estatutos de naturaleza civil, órdenes administrativas, declaraciones de política pública, ni reglas interpretativas o de carácter procesal. En el campo administrativo, esta protección constitucional aplica <u>únicamente</u> cuando la reglamentación administrativa acarrea consecuencias penales. *González Fuentes v. E.L.A.*, *supra*, págs. 409-410.

Expuesta la normativa jurídica aplicable, procedemos a disponer del asunto ante nuestra consideración.

**III.**

Luego de examinar los siete señalamientos de error del Sr. Olivencia Ortiz relacionados, en esencia, a la denegatoria del privilegio de libertad bajo palabra por parte de la Junta, resolvemos confirmar la decisión recurrida. Si bien la Junta identificó factores que favorecían la concesión del privilegio de libertad bajo palabra, igualmente identificó otra serie de factores por los que, al sopesarlos con aquellos factores positivos, determinó que no procedía la concesión del privilegio al Sr. Olivencia Ortiz.

Nótese que la Junta posee discreción para tomar en cuenta cualquier consideración meritoria que haya dispuesto mediante reglamento. Artículo 3-D de la Ley 118-1974, *supra*, sec. 1503d. Con relación al asunto ante nos, el Reglamento 9603 dispone que si a un peticionario le interesa ingresar a un programa interno, debe presentar una carta de aceptación del programa y, "en caso de que el Programa de Tratamiento interno al que desea ingresar el peticionario sea costeado por el Departamento de Corrección y Rehabilitación, deberá contar con un referido de este último donde se exprese que el mismo es autorizado para ingresar a dicho Programa, siempre y cuando sea requerido por el Departamento de Corrección y Rehabilitación". Artículo X, Sección 10.1(8)(e)(iv) del Reglamento 9603, *supra*, págs. 43-44. Más importante aún, la determinación sobre el ingreso de un peticionario a un programa

interno <u>está sujeto a los criterios establecidos por el DCR</u>. Artículo X, Sección 10.1(8)(e)(iv) del Reglamento 9603, *supra,* págs. 43-44. Precisamente, el DCR determinó, en el presente caso, que el programa *Teen Challenge* no constituía un plan de salida y denegó al Sr. Olivencia Ortiz una entrevista para ingresar al mismo debido a que el Sr. Olivencia Ortiz ya se había beneficiado de terapias de trastornos adictivos, y <u>no surgía que el Sr. Olivencia Ortiz requiriese de tratamiento interno</u>. Por tal razón, no asumió el pago del tratamiento a favor del Sr. Olivencia Ortiz. Ciertamente, en el ejercicio de su discreción, la Junta justipreció lo anterior como uno de los factores para denegarle el privilegio de libertad bajo palabra al Sr. Olivencia Ortiz.

Asimismo, la Junta sopesó que el hogar propuesto por el Sr. Olivencia Ortiz para pases de salida no fue corroborado por el DCR para determinar si era viable. Tal como pormenorizamos anteriormente, dicho requisito está contemplado en el Reglamento 9603, *supra,* por lo que es determinante al momento de auscultar la elegibilidad del Sr. Olivencia Ortiz en cuanto al privilegio de libertad bajo palabra. Artículo X, Sección 10.1(8) del Reglamento 9603, *supra,* pág. 38. De manera que, si un candidato al privilegio no cuenta con un plan de salida sobre residencia, la Junta tiene la facultad de considerar ello, <u>en conjunto con el restante de los criterios</u>, y determinar que no procede la concesión del privilegio.

Por tanto, como el Sr. Olivencia Ortiz no nos demostró que la determinación recurrida fuese arbitraria, contraria a derecho ni irrazonable, no podemos colegir que la Junta abusó de su discreción y se apartó de las facultades establecidas por ley. Adviértase que "el beneficio de la libertad bajo palabra <u>no es un derecho reclamable</u>, *sino un* privilegio cuya concesión y administración recae en el tribunal o en la Junta." *Quiles v. Del Valle, supra,* pág. 475. (Énfasis suplido). Por tal razón, la Junta no incidió al denegarle la libertad

bajo palabra al Sr. Olivencia Ortiz, en el ejercicio de su discreción y luego de justipreciar los factores antedichos.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Rivera Marchand disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| EDWIN OLIVENCIA ORTIZ<br>RECURRENTE<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br>RECURRIDO | TA2025RA00311 | Revisión procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm: 005017<br><br>Confinado Núm. 2-11574 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

**VOTO PARTICULAR DISIDENTE
DE LA JUEZA RIVERA MARCHAND**

En San Juan, Puerto Rico, a 15 de diciembre de 2025.

Examinada la causa ante nos, respetuosamente disiento del dictamen mayoritario emitido. De una lectura de la determinación administrativa impugnada resulta evidente que, la Junta de Libertad Bajo Palabra (Junta) descansó su denegatoria a la solicitud del recurrente, sobre dos factores que catalogó como "factores en contra del Peticionario". Ello, toda vez que los demás factores fueron identificados como favorables.[1] A continuación destacamos los factores consignados por la Junta como "en contra" del recurrente:

> El peticionario propuso su plan de salida en libertad bajo palabra para tratamiento interno en Teen Challenge. Fue referido para ser evaluado por el DCR. Del DCR determinaron el 10 de abril de 2025 por escrito lo siguiente, no se autoriza la entrevista [a]l peticionario para ingresar a tratamiento interno debido a que este se benefició de terapias de Trastornos Adictivos nivel institucional. Además de que se consignó que al presente no se desprende que el peticionario amerite tratamiento interno y que los programas internos no son plan de salida por lo que el DCR determinó no asumir el pago del tratamiento.

---

[1] Los factores a favor del recurrente fueron identificados como sigue: 1. El peticionario se encuentra clasificado en custodia mínima según consta en el expediente. Además, le fue realizada la Toma de muestra de ADN el 6 de marzo de 2013 según lo dispuesto en la Ley 175-1998 según enmendada. 2. El peticionario no ha sido objeto de querellas por problemas disciplinarios ni casos pendientes en los tribunales. Del expediente surge que el peticionario completo las terapias de Trastornos Adictivos el 9 de agosto de 2005 y 23 de enero de 2007. 3. El peticionario culminó las terapias de Aprendiendo a Vivir sin Violencia el 9 de agosto de 2005 y 23 de enero de 2007. El peticionario fue evaluado por la psicóloga Jennifer M. Crespo Rodríguez del SPEA el 17 de enero de 2024.



> El peticionario desea tomar pases en el hogar de su primo Jayson Rodríguez Vélez en Mayagüez. Este hogar no ha sido corroborado por el DCR para determinar su disponibilidad o viabilidad.
>
> Tomando en consideración todos los factores del presente caso, consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra.

Como puede observarse, el primer factor identificado por la Junta se relaciona al hecho que, el recurrente no cualifica para tratamiento interno en el Teen Challenge porque ya se benefició de las terapias de trastornos adictivos a nivel institucional. Es decir, toda vez que, el recurrente no amerita tratamiento continuado -lo cual debería ser un factor favorable y positivo en el progreso de su rehabilitación- la agencia lo caracterizó como un factor en su contra y en detrimento a los propósitos de lograr la concesión del privilegio.

El segundo factor se relaciona a la propuesta del hogar recurso para pases de salida. Sin embargo, la Junta consignó que el Departamento de Corrección y Rehabilitación no la había corroborado para determinar disponibilidad o viabilidad.

La agencia recurrida no consignó otro factor, razón o criterio adicional para fundamentar su denegatoria al petitorio del recurrente. De lo anterior se colige que, en este caso, el presunto incumplimiento o dejadez del Departamento de Corrección y Rehabilitación con su deber ministerial de investigar el hogar recurso propuesto por el recurrente,[2] se tomó en consideración por la Junta para no conceder la solicitud. Es decir, la preterición de una información importante y la ausencia de la acción de la agencia resultó ser utilizado como base para denegar el petitorio instado.

Como se sabe, la Ley Núm. 118 del 22 de julio de 1974 según enmendada, 4 LPRA sec. 1501 et. seq y el Artículo X, Sección 10.1 del Reglamento Núm. 9603, Reglamento de la Junta de Libertad Bajo Palabra establecen los criterios a ser considerados por la Junta para evaluar la procedencia o no del privilegio de libertado bajo

---

[2] Las agencias administrativas están obligadas a observar estrictamente sus propios reglamentos. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 134 (2019).

palabra, caso a caso.[3] Lo antes, se recopila principalmente mediante los datos, expedientes e informes provistos por el propio Departamento de Corrección y Rehabilitación.

En este caso, ante un expediente incompleto, la Junta optó por no ordenar a la agencia completar el informe necesario para establecer la viabilidad o no del hogar recurso. Aun cuando se podría considerar razonable que la Junta solo considere lo que se le presente en el expediente provisto por el Departamento de Corrección y Rehabilitación, lo cierto es que, en este caso, la información necesaria para completar el expediente se encuentra bajo el exclusivo control del mismo Departamento de Corrección y Rehabilitación y no del recurrente. Lo antes, necesariamente impide que la Junta cuente con un cuadro fáctico completo para justipreciar correctamente la totalidad de los criterios y los factores que obliga la ley y el reglamento que administra. Añádase a ello que, tampoco se desprende del dictamen recurrido, una relación de fundamentos que correspondan a todos los criterios que dispone la ley y el reglamento.[4] Por ello, su intervención está basada en un expediente incompleto y resulta prematura, lo cual atenta sobre el debido proceso de ley, los derechos del recurrente a un acceso a la justicia, así como los derechos de la sociedad a contar con una evaluación fehaciente de las agencias concernidas.



---

[3] El Art. 3(d) de la Ley Núm. 118 del 22 de julio de 1974 según enmendada, 4 LPRA sec. 1501 et. seq. establece los criterios que la Junta de Libertad Bajo Palabra tomará en consideración para conceder el privilegio de libertad bajo palabra: 1. Naturaleza y circunstancias del delito o delitos por los cuales cumple la sentencia; 2. Veces que el confinado haya sido convicto y sentenciado; 3. Relación de liquidación de la sentencia o sentencias que cumple el confinado; 4. Totalidad del expediente penal y social e informes médicos, completados por cualquier profesional de salud mental, que existan sobre el confinado; 5. Historial de ajuste institucional y del historial social y psicológico del confinado preparado por el Departamento de Corrección y Rehabilitación y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud; 6. edad del confinado; 7. tratamientos para condiciones de salud que reciba o haya recibido el confinado; 8. opinión de la víctima; 9. planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado; 10. lugar en el que piensa residir el confinado y actitud de dicha comunidad de serle concedida la libertad bajo palabra y ; 11. Cualquier otra consideración meritoria que la Junta de Libertad Bajo Palabra haya dispuesto mediante reglamento.

[4] A modo de ejemplo, no se incluye en el dictamen recurrido alguna referencia al historial médico, el presunto resultado de la evaluación de la psicóloga realizada o las opiniones de las víctimas.

Por ello, respetuosamente disiento del dictamen mayoritario. Procede revocar y devolver el caso para que se ordene finalizar la evaluación correspondiente sobre el hogar recurso pendiente ante el Departamento de Corrección y Rehabilitación, así como, sobre cualquier otro criterio que dispone la normativa antes expuesta, para luego ser justipreciado por la Junta, dentro de un debido proceso de ley.

**MONSITA RIVERA MARCHAND**
**JUEZA DE APELACIONES**